I call the next case for the morning, Direct TV Holdings v. National Labor Relations Board. It pleases the court, Greg Woflick of Woflick & Simpson, for the petitioner, Direct TV. I have not previously had an opportunity to argue before this circuit, and I thank you for the privilege of doing so this morning. This is a petition for review of a decision by the National Labor Relations Board affirming a decision of an administrative law judge that Freddy Zembrano terminated Greg Edmonds because of his union activity. The alleged protected activity took place on May 22, 2010, and I just want to set the table. I know that you've looked at this, but I think my few comments I want to make are better So May 22nd is when the protected activity took place. Edmonds at the time had been employed about two and a half years. During that short period of time, he had nine previous incidents where he had been disciplined. Three of them told him, if you make another mistake, you're going to get fired, you're going to lose your job. Subsequent to the May 22nd meeting, there were two incidents that Edmonds was involved in. One on May 30th that involved a vehicle accident, one on June 14th that involved a complaint by a customer to the office of the president of DirecTV. Both were investigated by Zembrano, the decision maker, and neither resulted in the termination of Mr. Edmonds. The triggering event that resulted in his termination occurred on July 21st, 2010, while Mr. Edmonds was waiting in line to get equipment, which is used to go and do installations of DirecTV services in customers' homes. There was a line, and he became agitated, and I apologize, but his comment to his supervisor, Mr. Zembrano, was, fucking do something about the fucking line. This is bullshit. We have to wait for ten hours while other people cut in front of us. This was said in front of at least 40 other employees that Mr. Zembrano supervised. The judge and the board concluded that Mr. Edmonds' termination for this event was motivated by his protected activity, and that we had failed to carry our burden to establish that Mr. Edmonds would not have been terminated absent his participation in that protected activity. To which I say, hogwash. The first issue, the court is well aware of the right-line analysis, deals with animus, and the board concluded that the general counsel met its initial burden to establish that there was unanimous on the part of DirecTV, and to do so under right-line, they have to establish that the protected activity was a motivating reason for DirecTV's termination of Edmonds. It can't be done in this record. It can't be done. Because of the two intervening events that happened from May 22nd, the protected activity Okay, there's a lot of confusion about when this meeting happened that Edmonds voiced the pro-union sentiments. And I'm confused about why there's confusion, because it would seem like there'd be a record of this meeting that Mr. Dymock attended, et cetera. I mean, this wouldn't seem to be the kind of thing that you would be confused about, and yet here we are, and there's apparently still confusion. And that, in turn, affects how we, the lens with which we look at these two, the accident and complaint incidents, because if they happened before the pro-union statements, then they're really not all that relevant. The administrative law judge didn't care when it happened, because he just dismissed, so he never made a finding on it. There was an issue in connection with this, and if you read the record, the record, we introduced evidence to establish that our testimony is wrong, that it didn't occur on May 22nd. We left the record open. They never produced the evidence to be able to establish some memo or some other document that they thought established that the meeting didn't occur on the 22nd. We actually introduced testimony that established it was May 22nd. They said- Did Dymock have to come from somewhere to attend this meeting? Yes, Mr. Dymock had a- And do they have travel records of that? No, he didn't have to travel quite that far. He was in charge of the Southern California region, which included Los Angeles County, San Bernardino County, and Riverside County. So he doesn't charge mileage or anything? No, no. He's got a company vehicle, and he didn't have to, in some way, be able to establish that. Based on the fact that the board chose not to produce whatever evidence they had regarding the memo that established that this meeting took place on the 22nd, I think under the circumstances, they didn't have any such evidence, and these two events then become critical because I agree with Your Honor that if the meeting took place at some other point in time, then you could reach some different conclusion. But the ALJ didn't care because he dismissed both of these events. But if the ALJ finds that it's not maybe Zabrano who's upset, but that Zabrano's being influenced by the higher-ups, then this idea that Zabrano could have used these two incidents if he's looking for a way to get rid of the person, then he can use those incidents as a pretext. And so your argument is kind of the contrary. Having not used them as pretext, that means he's not trying to, but I thought the ALJ found that Zabrano was going to just suspend him, but then because of some higher-up, he changed it to a termination. And Your Honor is exactly correct on those facts, and if I can address that. In this circumstance, if whoever the higher-up was, I think the inference said it was Mr. Dimmick, if Mr. Dimmick was going to influence the decision to terminate Mr. Zabrano, I mean Mr. Edmonds for the July 21st incident, he would have influenced him to terminate him for the other two incidents. Why wait? I mean the argument— Okay, but did the other two incidents go up the chain? There's no evidence that this incident, the July 21st incident, went up the chain, none whatsoever that it went up the chain. They were all handled in the same way. The reason for the inference is, I'm not going to fire you, I'm just going to suspend you, and then a week later I fire you. Something happened to change my mind. That's the reason for the inference. Whereas with these other two incidents, there's, you know, apparently this is within Zabrano's wheelhouse and he's able to just address these, and he says you didn't cause the car accident and the customer was wrong in the complaint, and moves on, and there's no reason for Dimmick to get involved. But that's exactly my point, and I think Your Honor makes it well. If Dimmick, this is, here's the argument. Union organizing is occurring at this facility. That's a timely thing. We've got to get rid of the ringleader. It's important. Let's get rid of him at the first opportunity. The first opportunity would have been two weeks later on May 30th when he ran into somebody in his vehicle. The unrefuted evidence is that everyone who causes an accident in a company vehicle gets fired. That definitely is a high-risk situation for my client. You otherwise get terminated. Zabrano investigated and concluded I'm not going to terminate you for this. I'm going to find that you weren't at fault, even though the insurance company, according to the evidence they submitted and the adjuster submitted, said they did their own investigation and they concluded that our driver, Mr. Edmonds, was at fault, that their driver was stopped in the driveway standing still, and that it was Mr. Edmonds who ran into her. The judge dismisses that and simply says there's no way on this record that Mr. Edmonds could have been disciplined for this circumstance, ignoring record evidence, this subjective weighing of the evidence, which in turn causes his decision to be unenforceable because it's not supported by substantial evidence, because a decision that doesn't consider the entire record evidence can't be considered to be supported by substantial evidence. But the thing here is that there's two incidents. I could understand if we had one, but there's two. The second one is a complaint from a customer, which is a big deal. Your honors might not be in this situation. I have. I'm waiting for someone at home for an hour and a half. I didn't notice that cable companies care about microphones. I'm happy to hear it's a big deal. It is a big deal. That's why you need DirecTV. No commercials. But it is, and they're required, and in this case, Mr. Edmonds did call and say, I'm going to be there at 2 o'clock. At 3.55, almost two hours later, the customer's still sitting there, pulling out what little hair he has left, saying, where are you? Then Mr. Edmonds does call and says, I'll be there by 4.30, and then he's not there by 4.30. Mr. Edmonds' defense is, hey, I called the guy and told him. Well, that's not good enough. That doesn't solve our problem. The judge dismisses it and says, oh, there's no way that Mr. Edmonds could have been disciplined for that. That is an irrational evaluation of this evidence. There's no doubt that Mr. Zombrano, if, as the board alleges, was clouded by animus to want to get rid of Mr. Edmonds, he could have used either of these two events to make that decision and to fire him. The fact that he elected not to makes it impossible to conclude that the termination on July 21st was somehow motivated by events that took place in May, two months earlier. So is that your answer, then, to the putting him under the quality control review immediately after his comments, that that's kind of whitewashed by these other two incidents of not doing anything to him? Yes, in part, and also, in addition, if you look at the actual testimony. Mr. Edmonds himself said, yeah, he came to me and he said sort of sarcastically, hey, we're going to QC all your jobs. Well, the evidence shows, if you read the entire record, that these two were sort of friends and friendly and they talked and joked among each other. So the comment by Mr. Zombrano that I'm going to QC all your jobs is not a threat. Mr. Edmonds never testified that he thought it was a threat. More importantly, there was never any evidence that any of his jobs were ever QC'd. None. And everyone's jobs get QC'd. That's how we do it. That's how DirecTV does such a great job with the services, is that every job gets QC'd. Sorry, I'm not putting in a plug. But it... Do you charge extra? No. Okay, but you just said two inconsistent things, which is he wasn't QC'd and they're always QC'd. So which one was it? What I'm saying is telling someone you're going to be QC'd would not be unusual because everyone gets QC'd on a regular basis. So telling me that I have to be to work on time tomorrow, if you told me and reminded me you need to be at work on time tomorrow, everyone needs to be. That wouldn't be a threat. So saying I'm going to QC your jobs isn't a threat. This is nothing more than a tortured effort by the board to try to justify a result that can't be justified. That threat is not, but I agree with Your Honor that I think the two intervening events involving Mr. Edmonds overweighs that argument that, oh, well, he made this threat so therefore it was motive. And that leaves this notion that he says, or the evidence that he says, okay, you're suspended, I'm not going to fire you. I mean, you shouldn't have said all that, the F word and all that, but I'm not going to fire you. And then a week later does, or however many days, a short time later does. And that becomes a credibility issue. And that's typically left to the fact finder? Typically. That's the operative term there, typically but not in all cases. And in a case where the judge is unable to justify why he had a particular credibility finding, this court is not bound to it. And this judge, his whole basis for saying that Mr. Zambrano wasn't credible was simply to say Mr. Zambrano gave succinct answers to leading questions. Well, I've never had a judge complain that I had a witness give succinct answers. And if I was asking leading questions, they had competent counsel who could have objected to them. That as a basis is a conclusion. It's not a reasoned basis not to believe Mr. Zambrano, particularly when you look at the fact that Mr. Edmonds is a certified liar. Mr. Edmonds has a sworn statement that he said when he went to the board and first files a complaint, he said, when I got fired by Mr. Zambrano, they didn't tell me the reason why I got fired. His testimony at the hearing changed. Oh, yeah, they told me I was fired for insubordination. That's a big difference. They didn't tell me why I was fired, and then I was fired for insubordination? He testified that one of his coworkers, Mr. Uribe, had told him that Zambrano was searching around the facility, asking people who was involved in union organizing. The general counsel put Mr. Uribe on the stand, and when I questioned him, I said, did Mr. Zambrano ever ask you? Excuse me, did Mr. Zambrano ever ask you this? No, he never asked me that. Did you ever tell Mr. Edmonds that Mr. Zambrano was asking about, you know, who was involved in union organizing? No, I never told Mr. Edmonds that. So again, he's impeached on his own testimony. And then finally, he's impeached because according to his own testimony, he said that when he went to the board, I've only been disciplined three times. I'm a great employee. He was disciplined nine times. There's a big difference, and Mr. Edmonds himself admitted there is a big difference between those. Frankly, Your Honor, on the issue of this suspension, what is suspension or not, you know, and then he was terminated, I say, so what? If Mr. Zambrano sat down and said, you know, I'm going to suspend you, and then reflecting on it said, you know what? This really undermines my ability to be able to manage this facility. You using this foul language in front of all those people. I've given you every benefit of the doubt. You have nine warnings. We have two more incidents. I give you the benefit of the doubt on both of them. And how do you repay me? You swear at me in front of all my employees. I only have thirty-nine seconds left, so if I could just . . . But regardless, under these facts, we clearly established that Mr. Edmonds would have been terminated regardless of this protected activity. We established that there were five other people terminated for swearing at supervisors. The judge ignores it. He just ignores it and says, well, they're all different. They're not different. It shows that we have a consistent record of terminating people based upon this exact same conduct. Who can argue the guy has nine warnings? He's there nine and a half years. We give him the benefit of the doubt on two more circumstances. There's no dispute about what he said and what occurred. No person in their right mind could say, that's okay. Even Edmonds said, I wouldn't apologize because I knew what I did was wrong. How can you in that record not say that we didn't carry the burden to establish that he would have been terminated regardless of his protected activity? Thank you. Good morning. I'm Heather Beard for the National Labor Relations Board. I'll address a few of the statements that were made by opposing counsel in his presentation. First of all, the two instances that took place in the date here. I'd like to overall begin by saying that the Administrative Law Judge did not ignore anything. The record and the decision by the Administrative Law Judge, thus affirmed by the judge, takes into consideration all of the facts that were put before him in this record. What happened was, there was a discrepancy regarding when was that meeting that took place, the DMIC meeting. Was it May 22nd or was it later? Was it sometime in June as Mr. Edmonds testified? There was a discrepancy between the general counsel and my opposing counsel, and ultimately, the judge decided it wasn't relevant, not because he just ignored it, but because it wasn't relevant for purposes of the analysis. Isn't it relevant though to the lens with which we look at these two incidents of the car wreck and the customer complaint? If they're after the protected activity, when everybody's looking for a way to get rid of Edmonds, then suddenly they're given one by this car wreck, but they don't take it, then that seems to be one set of facts. Obviously, if those two events were before the protected activity, then they fall out as having any relevance. How can you say it doesn't matter when this happened? I wouldn't be so cavalier as to say it didn't matter, but it wasn't relevant to the judge's that if we go with the May 22nd date and we go with the dates of the intervening incidents, if you will, that even though those two intervening incidents took place, they don't negate or dissipate the animus that was held by Mr. Zambrano. The analysis, the judge, in a footnote, does do . . . To me, it's directly relevant if you're saying, okay, you did something that made me mad, I'm just looking for a way to get rid of you that looks good, to cover my tracks. Then I don't take two gift-wrapped opportunities to get rid of you, then that would seem to undercut the argument that I was trying to get rid of you because you gave me two gift-wrapped opportunities to do it and I didn't take them. To me, I'm not saying it's dispositive of the case, but to say it doesn't matter, it's not really all that relevant or whatever, I don't understand that. The judge, to be sure, the judge did not determine what the date was of that meeting. But where I disagree with what you just stated, Your Honor, respectfully, is these were not two gift-wrapped opportunities to get rid of him. If you take a look at the cases that are cited by my opposing counsel in his brief about the proposition that if you don't take advantage of animus at one time, it certainly can be seen as the later instance of animus being somewhat negated. If you take a look at those cases, those were all instances where it was basically not a conflict as to whether or not there was misconduct. There were instances of employees who were, without argument, late, repeatedly. Various instances where it was sort of a gift-wrapped opportunity had the person had animus. But here, as the judge found, these were not those type of instances. Let's . . . Okay. Well, the car wreck, you almost always have different viewpoints about who caused the car wreck. The insurance company for the other party is saying, it was Mr. Edmonds. Mr. Edmonds says, no, it wasn't me. It seems like who you believe on that is a credibility question, which is gift-wrapped for Zimbrano to go, I'm sorry, I don't believe you. I believe the insurance company or the other lady or whoever it was that you hit. And there's not going to be 100 percent clarity or certainty about who caused that wreck. That's why . . . I mean, I presided over a lot of those trials. And they were not 100 percent beyond a reasonable doubt type of certainty. Right. And I guess . . . That's why it's lower burden approved. I'm not trying to argue there was a 100 percent reasonable or unreasonable doubt that he was not at fault in the car wreck. There was actually evidence of an accident report that he did fill out in detail, which in the accident report, it says that the woman who hit him had admitted that she was the one who had hit him. And he filled out a pretty extensive, which is in the record, accident report that Zimbrano was confronted with. And the point that the judge was making, and all that I'm making here, is that given this particular record, these two instances were not ones where there was nothing for Mr. Zimbrano to reckon with other than, like the swearing incident, his own experience of that incident where he was able very subjectively to make the determination, if you will, as to what the discipline should be. And so even though these two instances took place in between, it does not negate the evidence that the Board found. And I think what's important not to pass by is the QC threat. The QC threat that Mr. Zimbrano made a day or two following the DMIC meeting is something that the Board found that on its face alone constituted the requisite animus. And until the reply brief . . . Was there actually . . . was he actually subjected to that, or was that really . . . could that be taken as a joke? In other words, okay, well, now I'm watching you, ha-ha, and then he doesn't watch him. Well, he wasn't subjected to it, but importantly, the testimony that was credited by another employee who overheard it is that it was not a joke, and that he did appear to be . . . that Mr. Zimbrano appeared to be serious when he said it, and the other employee's testimony was that it seemed to be that he was going to be surveilling Mr. Edmonds. But then he didn't. There's no evidence in the record that he did do that, but a statement . . . Isn't that important? I mean, it seems to me that this ALJ was trying to get to an outcome and found a way to support that, and that's the opposite of what judges are supposed to . . . you should write your findings of fact before your conclusions of law, but it sounds like this was the reverse. Let's go try to find something. And what was found seems a little thin. Now, we have a very deferential standard review, so that may be ultimately a winner for you, but doesn't this seem a little result-oriented, all this, well, okay, he threatens the QC, and then we see no surveillance, no QCs, no evidence of any of that, and we know Edmonds would have said if there was. The car wreck, we have the insurance company saying it's Edmonds' fault. We have him saying it's not, but you say, well, that's so obvious, and the same thing with the customer complaint. You have an irate customer, and obviously he was late to the customer's house, whether he called or not or whatever. It seems very result-oriented. Explain to me how it's not, how it really seems to be objective. Okay, the first thing that I would say in defense of the judge's decision as not being result-oriented is there was a big dispute in this case over whether the activity that he engaged in, the swearing in front of his supervisor and his coworkers, was protected under the Atlantic Steel line of cases, which says that you don't lose protection under the act if you're complaining about being in a line and its working conditions, and did he swear, and did that lose protection of the act? The judge, in fact, found he did lose protection of the act for that, and did not go with the initial thrust of the general counsel's case, which is his very action of swearing at his supervisor about a term and condition of employment was protected. So I just point that out to say this wasn't a judge finding every single thing in favor of the general counsel, but in terms of this particular finding here, we've got the judge assessing those two instances in light of the fact that there was a statement of animus that was made by Zambrano, and importantly, Zambrano was in that meeting where Dimmick, who is the vice president of the southern region operations, that's his second level supervisor, and so witnessing the statements made by Dimmick in that meeting about unionization and having Mr. Edmonds be a loud, outspoken advocate in that meeting in front of his supervisor is something that the judge looked at, buttressing the finding that we have this QC threat of retaliation, and even though, as you point out, Judge, this didn't take place, the key purpose of that finding is that we're now in the right-line burden where the GC has established that there has been protected activity, union activity, knowledge, and animus, which shows that a motivating factor in the discharge was union activity, unless Mr. Wolflick can come and show by a preponderance of the evidence that the employee would have been fired anyway, and that is the import of what Mr. Zambrano did when he initially told Mr. Edmonds he was being suspended. In fact, the credited finding is that Mr. Zambrano told him specifically he was going to not be terminated and that he was coming back to work, and then when he did come back, there was no explanation for why it was that he was now being discharged, and so that particular piece of evidence is in the right-line analysis where the burden is on the company to demonstrate it would have done this anyway, and that's where I believe the company's case falls apart because of the credibility determinations, which I would like to say something about. This is absolutely not a case where the credibility determinations are not justified. In fact, my opponent did speak to part of what the judge said as to why he was discrediting Mr. Zambrano for his reasons for discharging Mr. Edmonds, but not the full comment. The judge found, I believe it's footnote 19 of the judge's found that he gave succinct answers to leading questions and that he seemed, I might be paraphrasing here, he seemed to be answering in a way that would benefit the company, and so with that, I would have you look at the Motorola case from the Fifth Circuit, which was cited by my opponent in his brief, which basically has almost the exact same kind of finding by a judge, by an administrative law judge, where the court describes it as brief but clear, where one witness was discredited based upon statements similar to what the judge made here. So I take strong issue with the fact that here, any of the credibility determinations were either result-oriented or not supported by the judge, and that's why, given the facts here and, as you point out, the deference given to the board here is based on credibility determinations and a consideration, a fair consideration of all the evidence that was here in this case. One other point that I would like to make regarding the reply brief of my opponent, there's a suggestion in the reply brief for the first time that there was no union activity specifically engaged in by Mr. Edmonds, and I would like to say that the, as our statement of facts demonstrates and all the transcript sites there show, Mr. Edmonds did speak about the union. In fact, in the company's opening brief, they admit on page 6 that even Dimmick himself says that Edmonds and another employee actually did testify, did speak in the meeting about union representation and that they thought union representation was a positive thing. So in this case, under the right-line standard, I would urge this court to take a look at what pieces of evidence we have, what inferences the judge made from the evidence and the credibility determinations, and enforce the board's order regarding Mr. Edmonds. If there's no other questions, I will sit down. Thank you. Thank you. I promise to stay within my five minutes. Counsel, even though we don't have much time, it does seem to me that this is basically a case that comes down to weighing of the evidence, deciding the credibility of witnesses. You certainly have much in your favor and you made an able argument, but how can we really deal with this on our standard review? Where is the legal problem or just overwhelming factual problem that we would have to overturn on? I believe the answer to your question, Your Honor, is that in order for the decision of the board has to be supported by substantial evidence. We cited Lauren v. NLRB for the proposition that where the board, the judge in this case, ignores substantial evidence, you don't meet that substantial evidence standard. Here, this administrative law judge ignored substantial portions of the record. To Judge Haines' point, I think we completely lose the fact that the judge says, oh yeah, there's no way that you could have terminated Mr. Zimbrano for this. He ignored the relevance of the evidence. There required a weighing here. You had to look at all the facts. For goodness sake, it's a car accident. Every car accident in the world almost is disputed. He said, she said. The fact that Zimbrano, who's supposed to be clouded by this idea that I hate unions and I have to get rid of Mr. Edmonds, said, no, I'm not going to fire you, has got to overwhelmingly establish, I'm not out to get you. If I was, this is my first shot two weeks after you made these supposed protected comments about union organizing activity, and I didn't seize it. So, ignoring record evidence, and my brief is filled with circumstances under which this judge ignored record evidence. By ignoring record evidence, he is, his decision can't be supported, according to the . . . . . . One of the questions I think was asked earlier of you is what record is there that this went up the chain, those other two incidents? Your reaction was, the final incident, there's no evidence. If in fact, there's no evidence of those first two incidents dealing with the car wreck and the late arrival, or never arrived, I can't remember now, if there's no evidence those went up the chain, that in and of itself is a reason why that opportunity wouldn't have been seized. All that, all I'm saying is, I'm not asking you to buy in as a juror to my statement. I'm just saying that the board has some latitude in figuring out what to make of this kind of evidence. I think the board only has latitude to be rational and not to ignore evidence. The termination on July 21st didn't go up the hierarchy. Mr. Dimmick never knew about it. Mr. Dimmick wasn't aware of it. Mr. Dimmick wasn't participating in it. Just like the event on May 30th, just like the event on June 15th. Also, your counsel opposite is relying on Zambrano's animus for the QC comment as sustaining their initial burden to prove that union activity was a motivated factor. Then, we can't ignore Zambrano. We could only ignore Zambrano if he was a pawn for some cat's paw or whatever the right analysis is for Dimmick or somebody else. . . . . He's the main player. . . . . If he's the guy that had the animus that meets their motivating factor, then his conduct has to be in play and then that's back at these two . . . I don't know. . . Exactly. That's exactly where I'm at, is that the judge ignores that evidence. The other thing the judge ignores, to your question, Judge Southwick, is the judge ignores that there are five other people terminated for swearing at their supervisor. Three of those cases were situations where one of them was on an answering machine and you swore at your supervisor and you got fired. Another was just one-on-one meeting. Another was passing in the hallway and they got fired for those comments. Here, you swear in this very obscene, inappropriate way in front of forty or fifty other employees and to respond to the board attorney's comment that that somehow shows that the judge wasn't working towards some predetermined outcome, the judge made that determination because no reasonable person could say that that language in the workplace in front of forty or fifty other employees is protected by the Act. There's no way that you could. He didn't have any choice. He couldn't have concluded that somehow that's protected because there isn't any case law or any other reason that would support such a conclusion. I want to end where I started by thanking you for the privilege to appear in front of you today. I wish you well. We both did well. Maybe we'll both be back. But not on this.